UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TRAMONTE QUEEN<br><br>Defendant | CRIMINAL No. 23-10293-LTS |

**GOVERNMENT'S OPPOSITION TO MOTION *IN LIMINE*
TO EXCLUDE PREJUDICIAL EVIDENCE RELATING
TO THE DEFENDANT'S CRIMINAL HISTORY**

The United States of America, by Leah B. Foley, United States Attorney, and Brian A. Fogerty and Jessica L. Soto, Assistant U.S. Attorneys for the District of Massachusetts, opposes, in part, defendant Tramonte Queen's motion to exclude evidence of his criminal history. ECF No. 128. Queen moves to exclude evidence of: (1) his "multiple outstanding arrest warrants at the time of his arrest on February 5, 2022"; (2) Boston Police's drug investigation near Queen's home; and (3) the fact that he was subject to house arrest and location monitoring and cut off his location monitoring device at the time of the offense. ECF No. 128 at 1.

The government does not intend to introduce evidence of any drug investigation near Queen's home. The government does intend to introduce testimony regarding Queen's arrest by police officers on February 5, 2022. Officers obtained Queen's iPhones in connection with his arrest. That arrest was made pursuant to outstanding warrants. However, the government does not intend to introduce testimony for any fact other than that he was arrested, Victim 1 was present, and the phones were seized.

The one issue in dispute is that the government will seek to introduce testimony and evidence that Queen was subject to court-ordered location monitoring during the relevant period and cut off his location-monitoring device. This evidence is highly probative of how Queen ran his operation, and why he chose to conduct it at certain locations. Specifically, Victim 1 will testify that for the majority of the time, Queen ran his operation from his mother's Dorchester home. *See, e.g.*, Victim 1 Interview Tr. 12–13 (filed under seal as Ex. A). However, when he became concerned about neighbor complaints, Victim 1 observed that he cut off his ankle monitor (corroborated by photos in Queen's iPhone XR) and began personally transporting the victims to Rhode Island. *See* Ex. A at 27. Evidence of house arrest and location monitoring is critical to explaining why Queen selected the locations for his operation and highlighting the risks he knowingly took to make money by using Victim 1. Therefore, it is admissible both as evidence that is intrinsic to the crime and as evidence of Queen's plan and motive under Rule 404(b).

### I.     Ankle Monitor Evidence is Admissible Because It Is Intrinsic to the Crime.

Testimony regarding Queen removing his court-ordered ankle monitor and limited corroborating evidence in the form of a single photo of the device is evidence that "concern[s] matters intrinsic to the crime[s] charged." *See United States v. Mare*, 668 F.3d 35, 39 (1st Cir. 2012) (citing *United States v. Villarman-Oviedo*, 325 F.3d 1, 11 (1st Cir. 2003)). The First Circuit has held that such evidence does not implicate Rule 404(b). *See United States v. Villarman-Oviedo*, 325 F.3d 1, 11 (1st Cir. 2003). For example, in *United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 55 (1st Cir. 2004), the First Circuit affirmed the admission of testimony regarding the defendant's threatened domestic violence leading up to the charged offense. The court held that the "district court supportably treated the evidence of [the defendant's] threats as relevant because . . . it tends to show that [the defendant] intended to" commit the offense. *Id.* at

51; *see also United States v. Souza*, 749 F.3d 74, 84 (1st Cir. 2014) (holding that evidence of fraudulent activity leading up to charged transactions "was part of the necessary description of the events leading up to the" crime).

Here, evidence of Queen's conduct with respect to the ankle monitor is intertwined with the conduct alleged in Counts One and Two of the Superseding Indictment. At trial, Victim 1 will testify about her interactions with Queen while he was on house arrest and subject to location monitoring. Moreover, the government cannot excise the evidence because it is part of the story about why he ran his operation at his mother's home and the risk he took by ultimately transporting Victim 1 to Rhode Island. Evidence of the risk inherent in cutting off the location monitoring device is important because it is additional proof that Queen not only knew that he was causing the victims to engage in commercial sex, but that doing so was so important to him that he would risk violating the terms of house arrest. In other words, the jury may infer that Queen was a knowing participant in Victim 1's commercial sex activity because a mere witness or bystander would have little incentive to cut off a court-ordered ankle monitor to accompany Victim 1 to Rhode Island. On the other hand, a person who generates income from Victim 1's activity would have a great incentive to do exactly what Queen did.

## II.    Ankle Monitor Evidence Is Motive And Plan Evidence Under Rule 404(b).

Alternatively, the ankle monitor evidence fits squarely within two permitted uses under Rule 404(b): proving Queen's motive and plan for first trafficking the victims at his home, and later moving them to Rhode Island. Fed. R. Evid. 404(b). In the First Circuit, courts apply a two-part test to determine whether 404(b) evidence is admissible. *United States v. Hicks*, 575 F.3d 130, 142 (1st Cir. 2009). First, the Court must determine whether the evidence has a special relevance. *Id.* If the evidence "would allow a juror to make at least one inference probative" of a

3

material issue, the evidence meets this prong.  *United States v. Nickens*, 955 F.2d 112, 124-125 (1st Cir. 1992) (citations omitted).  Second, the Court must determine whether the evidence should be excluded under Federal Rule of Evidence 403, "which allows courts to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice.'" *Hicks*, 575 F.3d at 142 (citing Fed. R. Evid. 403).

The ankle monitor evidence satisfies the first *Hicks* element, because, as described above, the ankle monitor and the terms of his probation were the reason why Queen first ran his operation at his mother's Dorchester home.  Victim 1's testimony regarding Queen's subsequent removal of the device explains why he put the operation on the road and transported the minor victims to Rhode Island.

The ankle monitor evidence also satisfies the second *Hicks* element in that it does not present a substantial risk of unfair prejudice.  In balancing the probative value and risk of unfair prejudice of a defendant's prior bad acts, the Court should bear in mind that Rule 404(b) is a rule of inclusion, not exclusion.  *United States v. Carty*, 993 F.2d 1005, 1011 (1st Cir. 1993) (citations omitted).  The government's evidence will consist of very limited testimony from Victim 1 regarding Queen removing the device, a photo of the device obtained from Queen's cell phone, and potentially Probation records confirming that Queen was subject to location monitoring during the relevant period.  *See Hicks*, 575 F.3d at 142 n.6 (Court concerned about "piling on" of admission of multiple prior drug convictions to show intent but found no abuse of discretion in the admission of the convictions to show intent: "[e]vidence . . . [of] a single prior drug conviction would have allowed the government to challenge appellant's claim of innocence without incurring the risk at the heart of Rule 403").  The government will not introduce evidence of any other aspect of Queen's criminal history.  Nor will it attempt to introduce any other terms of probation.

4

Considering the limited scope of this sanitized evidence against the probative value of the ankle monitor evidence in terms of proving why Queen ran his operation at two specific locations, the Court should admit the evidence.[1]

## Conclusion

For the foregoing reasons, the government respectfully requests that the Court admit evidence that Queen was subject to court-ordered location monitoring during the relevant period and removed that device.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/ Brian A. Fogerty
BRIAN A. FOGERTY
JESSICA L. SOTO
Assistant United States Attorney

---

[1] The government is also willing to forgo introduction of any evidence corroborating Victim 1's testimony regarding Queen's removal of the ankle monitor if the parties can agree to a stipulation of fact stating that Queen was subject to court-ordered location monitoring during the relevant period and removed the monitoring device.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                           /s/ Brian A. Fogerty
                           BRIAN A. FOGERTY
                           Assistant United States Attorney

Date: January 5, 2026