UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

TRAMONTE QUEEN,

    Defendant.

Criminal No. 23-10293-LTS

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF SGT. DET. MEDINA RE: CELLULAR TELEPHONE EXTRACTIONS

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby files this opposition to defendant Tramonte Queen's Motion to Exclude Expert Testimony of Sergeant Detective Medina re: Cellular Telephone Extractions ("Def. Mot.").  ECF No. 126.  Queen argues that Sgt. Det. Medina's testimony should be excluded because (1) he does not have the qualifications necessary to offer expert testimony under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms*., 509 U.S. 579 (1993); (2) the testimony is not based on sufficient facts or data and is not the product of reliable principles and methods, pursuant to Fed. R. Evid. 702; and (3) the notice of expert testimony does not comply with Fed. R. Crim. P. 16 because it provides only generalized topics.

Sgt. Det. Medina was the forensic examiner assigned to the investigation of the defendant when he was arrested by the Boston Police Department on February 5, 2022.  His trial testimony will mostly center on his deployment of the digital forensic tool known as Cellebrite and the data captured by the Cellebrite Universal Forensic Extraction Device (UFED) reader reports (hereinafter a "Cellebrite reader report").  Sgt. Det. Medina's curriculum vitae and expert

disclosure establish that he has sufficient training and experience in digital forensics to support his qualification as an expert, to the extent necessary. Cellebrite reader reports are regularly generated and reviewed by law enforcement and therefore testimony about them is the product of reliable principles and methods, which Sgt. Det. Medina reliably applied in this case. Finally, the government's expert disclosure addresses all the items outlined in the rule and therefore it meets the requirements of FRCP 16. For these reasons, the Court should deny the defendant's motion to exclude Sgt. Det. Medina's testimony.

## **BACKGROUND**

On October 20, 2025, the government filed an expert disclosure regarding the anticipated testimony of Boston Police Sergeant Detective Joseph Medina during the defendant's trial on sex trafficking charges. ECF NO. 126. The disclosure included sections on Sgt. Det. Medina's Training and Qualifications, Statement of Opinions, and Prior Expert Testimony and Publications. *See id.* The government also provided defense counsel with Sgt. Det. Medina's curriculum vitae.

### **A. Sgt. Det. Medina's Training & Qualifications.**

Sgt. Det. Medina's CV documents his long career with the Boston Police Department. He has been employed by BPD since 2003 and currently serves as a Sergeant Detective in the Homicide Unit. Most pertinent to this motion, from April 2021 to June 2024, Sgt. Det. Medina served as a Detective and Forensic Examiner in BPD's Bureau of Investigative Services Forensic Division. During that time, he also served as a Task Force Officer with the United States Secret Service. While a Forensic Examiner, Sgt. Det. Medina was assigned to the United States Coast Guard's Mark Jenkins Digital Forensics Laboratory. His resume also indicates that Sgt. Det. Medina received a Bachelor of Science in Criminal Justice from Curry College in 2020.

As a Forensic Examiner, Sgt. Det. Medina had several responsibilities. He conducted forensic analysis in support of investigations for various divisions within BPD, as well as for external local, state, and federal law enforcement agencies.  That work included assisting with the execution of federal, state, and local search warrants and the collection and preservation of digital evidence, including cell phones, computers, motor vehicles, and digital video recorders.  In June 2024, Sgt. Det. Medina became a Sergeant in Boston's District B-2 (Roxbury) and then he became a Sergeant in Boston's Homicide Unit (city wide).  Thereafter, he was promoted to Sergeant Detective in the Homicide Unit, where he remains today.

Sgt. Det. Medina's CV also details his specialized trainings and certifications in digital forensics.  Sgt. Det. Medina's trainings relevant to cellular devices are listed below (in reverse chronological order):

- National Computer Forensic Institute – Multimedia Investigative Techniques
- Advanced Mobile Extraction Techniques Program
- Cellebrite Advanced Smartphone Analysis
- Amped Five Forensic Image and Video Enhancement Training
- National Computer Forensic Institute - Basic Computer Evidence Training
- File system Recognition Electronic Sterilization and Hashing curriculum
- Cellebrite Certified Operator + Cellebrite Certified Physical Analyst
- National Computer Forensic Institute - Digital Evidence for Investigators
- National Computer Forensic Institute - Basic Investigation of Computer and Electronic Crimes Program

Sgt. Det. Medina also has several certifications in digital forensics relevant to cellular devices. Those certifications include Cellebrite Certified Physical Analyst Recertification (CCPA); Cellebrite Certified Operator Recertification (CCO); Cellebrite Advanced Smartphone Analysis (CASA); Cellebrite Certified Operator (CCO); Cellebrite Certified Physical Analyst (CCPA).  The

government summarized these trainings and qualifications in its expert disclosure for Sgt. Det. Medina.

**B.  Sgt. Det. Medina's Statement of Opinions.**

The government's expert disclosure for Sgt. Det. Medina summarized the testimony that the government expects him to offer during trial.  That testimony will include background on BPD's Bureau of Investigative Services, Forensics Division, including the quality assurance programs under which the examiners review evidence, standard operating procedures, as well as an overview on forensic examinations of digital devices.  He is also expected to testify about the programs used to extract data from cellular devices and/or sim card, including programs such as Cellebrite, and the types of data obtained, including device information, evidence of user attribution, phone numbers connected to the phones, phone contacts, social media contacts, call information, text messages, photographs, videos, messaging platforms, messages contained within messaging platforms, location data, and corresponding dates and times.  The disclosure also indicates that Sgt. Det. Medina may testify about relevant metadata acquired from cellular devices, including dates when information was created, modified, and/or deleted, and artifact identification and authentication from selected extraction data.

The disclosure also describes the testimony specific to this matter that Sgt. Det. Medina is expected to offer during the trial.  That testimony includes the processes that Sgt. Det. Medina employed to extract data from Queen's Apple iPhone 8 and Apple iPhone XR.  Additionally, the disclosure indicates that Sgt. Det. Medina may testify that, based upon his review of the cellular phones seized and extracted in this case, that certain excerpted videos, images, and electronic communications are accurate reproductions of the data contained within the respective devices. He may testify concerning the absence of certain data in extraction data as well.

The expert disclosure indicated that "[s]ome of the testimony described in this disclosure may not be expert testimony requiring notice and disclosure.  However, the government provides the following information out of an abundance of caution."  ECF No. 126, n. 1.

### C. Sgt. Det. Medina's Prior Testimony and Publications.

The expert disclosure disclosed that Sgt. Det. Medina has not been previously designated an expert but has testified in the capacity as a forensic examiner.  Also, it states that he has not authored any publications in the previous 10 years.

## ARGUMENT

### A. Expert Qualification

When considering expert testimony, a district court first determines whether a witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also United States v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006).  "It is well-settled that trial judges have broad discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses." *Diefenbach v. Sheridan Transp*., 229 F.3d 27, 30 (1st Cir. 2000) (cleaned up).  While an "expert should have achieved a meaningful threshold of expertise in the given area[,] . . . expert witnesses need not have overly specialized knowledge to offer opinions." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (cleaned up); *see also Vargas*, 471 F.3d at 262 (1st Cir. 2006) ("It is not required that experts be blue-ribbon practitioners with optimal qualifications.")(cleaned up) and *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623–24 (5th Cir. 2018) ("Although an expert's qualifications may be less-than-sterling, she may still be certified. This is because differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.") (cleaned up).

**B. Expert Testimony**

Under Federal Rule of Evidence 702, an expert witness may testify in the form of an opinion (or otherwise) if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), the Supreme Court provided several non-exclusive, non-dispositive factors for trial courts to consider when assessing the reliability of expert testimony. These factors include whether an expert's technique or theory (1) can be or has been tested; (2) has been subject to peer review and publication; (3) has a known or potential error rate; (4) has maintained standards controlling the technique's operation; and (5) has general acceptance in a relevant scientific community.[1] *Daubert*, 509 U.S. at 593-94. Although *Daubert* listed these factors a trial court may consider, the Court emphasized that the inquiry is a "flexible one." *Id*. And since *Daubert*, the Supreme Court has cautioned that the sample factors "do not constitute a definitive checklist or test." *Kumho Tire Co.*, 526 U.S. at 150. Rather, "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id* at 141.

The trial court serves as a gatekeeper to the admissibility of expert testimony and possesses broad discretion to determine whether proffered expert testimony meets the *Daubert* requirements. The Supreme Court has emphasized that district courts are granted "considerable

---

[1] While *Daubert* focused on scientific evidence, the standard also applies to proffers of "technical, or other specialized knowledge." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999).

leeway" in determining how to assess reliability. *Kumho Tire Co.*, 526 U.S. at 150. "[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [their] testimony." *Id.* at 150 (internal quotations omitted). "[W]hether *Daubert*'s specific factors are, or are not, a reasonable measure of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153; *see also Carballo Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 81, 83 (D.P.R. 2001) ("When assessing the reliability of technical or specialized expert testimony, as opposed to scientific testimony, the trial judge exercises broad latitude both in how it determines the reliability of the testimony, and in the ultimate reliability determination.") (cleaned up).

The Supreme Court has cautioned that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. *Daubert* also cautions against being "overly pessimistic about the capabilities of the jury and of the adversary system generally." *Id.* at 596. Accordingly, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee's Note to 2000 amendment.

### C. Expert Notice

Federal Rule of Criminal Procedure 16(a)(1)(G) requires the government to provide a defendant with a "written summary of any testimony" of an expert witness the government intends to introduce in its case-in-chief during trial under Federal Rules of Evidence 702, 703, or 705. The summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). That Rule section "is intended to minimize surprise that often results from unexpected expert testimony, to reduce the need for continuances,

and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination" *United States v. Bresil*, 767 F.3d 124, 127 (1st Cir. 2014)(cleaned up); *see also United States v. Hilario-Hilario*, 529 F.3d 65, 72 (1st Cir. 2008) (the Rule "helps the opponent to develop cross examination and to retain a counter-expert.")

### D. As a trained and experienced former Digital Examiner, Sg. Det. Medina has the qualifications necessary to offer expert testimony.

The defendant first argues that Sgt. Det. Medina's does not have the qualifications necessary to offer expert testimony. Specifically, he notes that Sgt. Det. Medina does not have an educational background in computer science or foundational software education. Def. Mot. at 1. The defendant concedes what he cannot deny in stating that Sgt. Det. Medina "has been trained on how to use software to extract data using Cellebrite." Def. Mot. at 1. But he also asserts that Sgt. Det. Medina "does not know how Cellebrite's software works." Def. Mot. at 2.

Sgt. Det. Medina has sufficient learning in the subject to give expert testimony on it. The defendant seems to try to argue that because Sgt. Det. Medina's Bachelor of Science degree was not in computer science, it negates any other training and experience he has received in digital forensics. Such an argument has no legal support. There are no specific educational requirements for those testifying regarding digital forensics. Rule 702 itself described the several alternative (but not required) modes by which a witness can be qualified as an expert: "knowledge, skill, experience, training, or education."

As Sgt. Det. Medina's CV puts on full display, he has received significant formal training in digital forensics, and Cellebrite in particular. Sgt. Det. Medina earned a Bachelor of Science degree in Criminal Justice from Curry College in 2020. He also has attended nine trainings relevant to digital forensics as applied to cellular devices. And he holds five certifications on Cellebrite alone: Cellebrite Certified Physical Analyst Recertification (CCPA); Cellebrite Certified

Operator Recertification (CCO); Cellebrite Advanced Smartphone Analysis (CASA); Cellebrite Certified Operator (CCO); Cellebrite Certified Physical Analyst (CCPA).  He has also significant and varied experience in deploying that training over the course of the four years that he served as a citywide forensic examiner.  Defense counsel is certainly free to question Sgt. Det. Medina regarding his background during cross-examination, which may permissibly bear on the "the weight to be assigned to the testimony by the trier of fact," *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623–24 (5th Cir. 2018).

### E.  Sg. Det. Medina's testimony will be based on sufficient facts or data and is the product of reliable principles and methods reliably applied to the facts of this case.

The defendant also argues that Sgt. Det. Medina's testimony is not based on sufficient facts or data and is not the product of reliable principles and methods.   He states that Sgt. Det. Medina "can not explain why the [Cellebrite] extraction did not capture messages allegedly contained on the alleged victim's cell phone, but did capture messages that do not appear on the alleged victim's phone."  Def. Mot. at 1.  He further asserts (without basis) that Sgt. Det. Medina "is incapable of answering basic questions of reliability related to error rates, inconsistent data, and the frequency of anomalies."  Def. Mot. at 3.

Sgt. Det. Medina's proposed testimony as to the Cellebrite reader reports of the defendant's two iPhone devices does not rely upon any new or novel techniques, methodologies, and software; and may not even be expert testimony.  Cellebrite has been repeatedly tested and shown to be a tool that is effective in accurately acquiring information from cellular telephones.[2]  Accordingly, Cellebrite reader reports are widely relied upon in state and federal court.  Moreover, it is debatable

---

[2] *See, e.g.,* Department Homeland Security, Cellebrite UFED4PC v7.69.0.1397 – Physical Analyzer v7.68.0.25: Test Results for Mobile Device Acquisition Tool https://www.dhs.gov/sites/default/files/2025-04/25_0424_st_test_results_for_mobile_device_acquisition_tool-cellebrite_ufed4pc_v7.69.0.1397-pa_v7.68.0.25.pdf (last accessed on January 1, 2026).

whether the government was even required to notice Sgt. Det. Medina as an expert when it comes to his testimony regarding the Cellebrite reports.  Courts, in this circuit and others, have found such evidence to be properly within the ambit of lay testimony.  *See United States v. Montijo-Maysonet*, 974 F.3d 34, 47 (1st Cir. 2020) ("Pérez identified words on a spreadsheet (a/k/a, an 'extraction report') as the text messages Montijo exchanged with Meléndez, which agents extracted from Montijo's cell phone. . . . Montijo does not explain why this testimony required 'scientific, technical, or specialized knowledge.' And we conclude it didn't."); *see also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir.2007) ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise[.]"); *United States v. Rubio*, 2022 WL 17246937, at *2 (5th Cir. 2022) (unpublished) ("cell phone extraction reports [a]re 'machine-generated results' and thus not testimonial" (collecting cases)); *United States v. Ovies*, 783 F. App'x 704, 707 (9th Cir. 2019) (unpublished) (finding the district court did not abuse its discretion by allowing agent "to testify about using Cellebrite to extract data from [defendant's] cell phone" without qualifying him as an expert witness); *United States v. Chavez-Lopez*, 767 F. App'x 431, 433-34 (4th Cir. 2019) (unpublished) (finding testimony "about the extraction of the cellphone data" was lay testimony.).  In the interest of caution and transparency though, the government provided an expert disclosure as to Sgt. Det. Medina's anticipated testimony.

Any alleged issues with the evidence about which Sgt. Det. Medina will testify, including the Cellebrite reader reports, should be addressed during the trial.  In his motion, the defendant includes his (at times, skewed, and other times, incorrect) interpretation of select evidence to support his claim that reader reports about which Sgt. Det. Medina are inaccurate.  For example,

he compares the Cellebrite reader reports of the defendant's phones to a partial extraction of Victim 1's phone, and he asserts (without support) that Sgt. Det. Medina cannot explain a perceived discrepancy. *See* Def. Mot. at 2. A *Daubert* motion however is not the place to engage in factual disputes about what the evidence does (or does not) show. The trial will provide ample opportunity for the parties to engage in the "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," contemplated by the Supreme Court. *Daubert*, 509 U.S. at 596.

**F. Sgt. Det. Medina's expert disclosure complied fully with Fed. R. Crim. P. 16.**

Lastly, the defendant takes issue with the government's notice of Sgt. Det. Medina's testimony. He argues that the notice does not comply with Fed. R. Crim. P. 16 because "it does not contain a complete statement of Sgt. Det. Medina's opinions, the bases and reasons for them, a list of all the publication for the last ten years, or a list of cases in which he testified about cell phone exactions." Def. Mot. at 3-4.

The government's disclosure provided the defendant with notice regarding the background information that Sgt. Det. Medina is expected to provide during his testimony. Specifically, it disclosed that Sgt. Det. Medina will testify regarding BPD's Bureau of Investigative Services, Forensic Division (through which he conducted the work on the defendant's devices) and forensic examination of digital devices. The disclosure also identified the relevant software program (Cellebrite) and the types of data that Cellebrite can extract from devices, including device information, evidence of user attribution, phone numbers connected to the phones, phone contacts, social media contacts, call information, text messages, photographs, videos, messaging platforms, messages contained within messaging platforms, location data, and corresponding dates and times. It further disclosed that Sgt. Det. Medina may testify about metadata that can be acquired from the

devices, including creation, modification, and/or delete dates, and identification and authentication from selected extraction data.

The government's disclosure also identified Sgt. Det. Medina's expected testimony specific to this case.  It stated that Sgt. Det. Medina "may testify that, based upon his review of the cellular phones seized and extracted in this case, that certain excerpted videos, images, and electronic communications are accurate reproductions of data contained within the respective devices."  Finally, it indicated "he may also testify concerning the absence of certain data in the selected extraction data."

The government also met the requirements as to lists of testimony and prior publications and is unsure on what basis defendant alleges it did not.  As stated on pg. 2 of the expert disclosure, Sgt. Det. Medina has neither been designated as an expert in federal court nor authored any publications in the last ten years.  In the interest of caution, today the government provides the case name in which Sgt. Det. Medina testified as to cellular devices of a defendant.  The case was *Commonwealth v. Jeffrey Hunter Carter-Fuller,* Docket No. 2184CR00820 (Superior Court, Suffolk County).

By disclosing background information, as well as the information specific to the defendant's case, that Sgt. Det. Medina is expected to testify and prior testimony regarding digital forensics and his (lack of) publications or prior expert testimony, the government's expert disclosure notice for Sgt. Det. Medina has "provide[d] the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."  *United States v. Bresil*, 767 F.3d 124, 127 (1st Cir. 2014).

*(this space left blank intentionally)*

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny the defendant's motion to exclude expert testimony of Sgt. Det. Medina re: cellular telephone extractions.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    /s/ Jessica L. Soto
       BRIAN A. FOGERTY
       JESSICA L. SOTO
       Assistant U.S. Attorneys

Dated: January 5, 2025

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing upon all counsel of record by electronic filing notice.

/s/ Jessica L. Soto
Assistant U.S. Attorney

Dated: January 5, 2025